Electronically Filed - Washington - October 15, 2021 - 11:27 AM

**IN THE TWENTY FOURTH JUDICIAL CIRCUIT**
**COUNTY OF WASHINGTON**
**STATE OF MISSOURI**

| | |
|---|---|
| MARCIALENE A. RADFORD, ) | |
| f/k/a Marcialene A. Hubbs ) | |
|     Plaintiff, ) | |
| ) | |
| vs. ) | Cause No:  20WA-CC00228 |
| ) | |
| ) | |
| LOANCARE, LLC ) | |
| ) | |
| & ) | |
| ) | |
| NewRez, LLC ) | |
| **Serve:** ) | JURY TRIAL DEMANDED |
| CSC Lawyers Incorporating Service ) | |
| Registered Agent ) | |
| 221 Bolivar Street ) | |
| Jefferson City, MO  65101 ) | |
|     Defendants. ) | |

**FIRST AMENDED PETITION FOR DAMAGES**

**PARTIES**

1.     Plaintiff Marcialene A. Radford f/k/a Marcialene A. Hubbs (hereinafter "Radford") is a resident of the State of Missouri who owns a home in the County of Washington located at 11159 Zinc Mine Road, Mineral Point, Missouri 63660 (hereinafter "Mineral Point"), and she brings this lawsuit seeking monetary damages.

2.     Defendant LoanCare, LLC (hereinafter "LoanCare") is a corporation organized and existing pursuant to the laws of the State of Virginia and it conducts business in the State of Missouri and the County of Washington. LoanCare's primary business involves residential mortgage servicing.  Its registered agent for service of process is CT Corporation, 120 S. Central, Clayton, Missouri 63105.

Electronically Filed - Washington - October 15, 2021 - 11:27 AM

3.      Defendant NewRez, LLC (hereinafter "NewRez") is a corporation organized and existing pursuant to the laws of the State of Delaware and it conducts business in the State of Missouri and the County of Washington. NewRez's primary business involves residential mortgage servicing and other financial services.  Its registered agent for service of process is CSC Lawyers Incorporating Service  221 Bolivar Street, Jefferson City, MO  65101.

## JURISDICTION

4.      The matter and amount in controversy in this cause exceeds Twenty Five Thousand Dollars ($25,000.00) exclusive of interest and costs.

5.      Defendant LoanCare is subject to the jurisdiction of this Court because it conducts business here, and the wrongful conduct and actions in which it engaged and which gave rise to this petition occurred here.

6.      Defendant NewRez is subject to the jurisdiction of this Court because it conducts business here, and the wrongful conduct and actions in which it and/or its agent, LoanCare LLC, engaged and which gave rise to this Petition occurred here.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

7.      Plaintiff's father, Clifford Hubbs originally purchased the Mineral Point property. On September 21, 2006 he refinanced the property and added Plaintiff to both the title of the property and as signatory on the note and deed of trust, as the refinance included the issuance of a note and deed of trust.

8.      On September 23, 2013 Clifford Hubbs signed off on and filed a quitclaim deed wherein he transferred his entire ownership interest in the property to Plaintiff.

9.      In March of 2019, the Note and Deed of Trust on the Mineral Point property were acquired by New Residential Mortgage, LLC and it transferred the servicing rights on the note

Electronically Filed - Washington - October 15, 2021 - 11:27 AM

and deed to trust to Defendant NewRez, LLC which then entered into a contract with Defendant LoanCare to act as a "subservicer."

10.     NewRez maintained its status as the servicer on the note and deed of trust, but hired Defendant LoanCare to service the account on its behalf. LoanCare handled the account servicing for NewRez and on its behalf, and LoanCare and NewRez shared the monthly fee associated with the servicing.

11.     Defendant LoanCare is a wholly owned subsidiary of Defendant NewRez.

12.     At all times mentioned herein LoanCare was acting on behalf of and within the scope of its contract with NewRez as its servicing agent with all actual and apparent authority.

13.     Plaintiff's father, Clifford Hubbs, passed away on May 31, 2020.

14.     At the time that the servicing was transferred to LoanCare, Plaintiff was current on her monthly mortgage payment obligation.

15.     Plaintiff tendered her payments for the months of April and May of 2019 in a timely manner, and Defendant LoanCare credited those payments, and applied them to Plaintiff's account. Those payments were sent by Plaintiff's husband at the time, Seth Radford, and the checks were drafted on Seth Radford's checking account.

16.     In June of 2019 LoanCare returned the payment which had been sent for the June 2019 obligation. Plaintiff's husband, Seth Radford, contacted LoanCare and was advised that it would no longer accept payments drafted on Mr. Radford's checking account because he was not obligated on the note and his name was not on the title.

17.     As a result, Plaintiff sent in a double payment in the form of a United States Postal Service money order in the amount of $600.00 at the end of June 2019 to cover her obligations on the note for the months of June 2019 and July 2019.

Electronically Filed - Washington - October 15, 2021 - 11:27 AM

18.      Plaintiff sent the money order double payment via United State Post office mail with delivery confirmation.

19.      Plaintiff has USPS delivery confirmation documentation showing that the double payment was delivered to LoanCare on July 5, 2019. In addition, she has obtained a copy of the money order from the USPS showing that the money order was cashed by Defendant LoanCare when it deposited the money order at Wells Fargo Bank, which is the entity through which LoanCare does its banking.

20.      LoanCare claimed that it never received the money order, and it has never properly credited the two payments to Plaintiff's account even though it has been provided with copies of the delivery confirmation for the money order and photocopies of the front and back of the negotiated USPS money order on multiple occasions.

21.      Plaintiff tendered, and LoanCare accepted, payments for the months of August, September, October, November, and December of 2019.

22.      Despite the fact that Plaintiff was current when LoanCare took over the servicing of the loan, and Plaintiff had tendered every payment which came due since that time, LoanCare started showing Plaintiff as 60 days past due in September of 2019 on both her monthly mortgage statements and on Plaintiff's credit report. LoanCare also began imposing late charges and fees to the account.

23.      Plaintiff received correspondence from LoanCare dated October 29, 2019 advising her that she was in default on the account.

24.      On November 8, 2019, Plaintiff sent correspondence to LoanCare which was identified as a Request for Information and Notice of Error pursuant to the Real Estate Settlement Procedures Act.  The letter disputed that she was in default on the account and requested that LoanCare

Electronically Filed - Washington - October 15, 2021 - 11:27 AM

explain how her account was being shown as 60 days past due when she was completely current. The letter enclosed copies of all supporting payment documentation including the delivery confirmation on the USPS money order and a copy of the negotiated money order in addition to all other payments which had been tendered from April 2019 through October of 2019.

25.     The Notice of Error letter was sent to LoanCare's designated address for Notice of Error/Information Request letters which is LoanCare, Attn: Mortgage Resolution, P.O. Box 8068 Virginia Beach, VA 23450. The letter was sent via United States Post Office with delivery confirmation.

26.     The United States Post Office confirms that the letter was delivered to LoanCare at its designated address on November 15, 2019.

27.     Plaintiff never received any acknowledgment from LoanCare that it had received the Notice of Error letter, and LoanCare never provided any kind of a response.

28.     Plaintiff pulled her credit report in early November of 2019 and found that she was being shown as 90 days past due on her LoanCare account.

29.     Plaintiff sent a letter to the three major credit reporting agencies (Equifax, Experian and TransUnion) dated November 14, 2019 wherein she disputed the LoanCare trade line, and provided supporting documentation showing that all payments had been made going back to April of 2019.

30.     Upon information and belief, Plaintiff believes that LoanCare received an Automated Credit Dispute Verification request from each of the credit reporting agencies regarding Plaintiff's dispute.

31.     Plaintiff received notification from each of the three credit reporting agency indicating that LoanCare had verified that the late payment information was accurate.

Electronically Filed - Washington - October 15, 2021 - 11:27 AM

32.     Plaintiff tendered her payment for the month of January 2020 in a timely manner, but it was not negotiated by LoanCare.

33.     Plaintiff tendered her payment for the month of February 2020 in a timely manner, but it was not negotiated by LoanCare.

34.     Plaintiff tendered her payment for the month of March 2020 in a timely manner, but it was not negotiated by LoanCare.

35.     Plaintiff tendered her payment for the month of April 2020 in a timely manner, but it was not negotiated by LoanCare.

36.     Plaintiff tendered her payment for the month of May 2020 in a timely manner, but it was not negotiated by LoanCare.

37.     Plaintiff received a letter from LoanCare dated March 13, 2020 wherein it stated that she was in default on the account and advising her of LoanCare's intent to go forward with foreclosure on the property.

38.     This lawsuit was filed on June 11, 2020. Sometime thereafter, LoanCare retained an entity called Guardian Asset Management to "secure and winterize" Plaintiff's property.

39.     On July 24, 2020, some 6 weeks after the present case was filed, representatives of Guardian Asset Management arrived at Plaintiff's property on behalf of defendants, LoanCare and NewRez. While on the property, the representative of Guardian broke into the home, turned off the water, installed a different lock on the backdoor before being interrupted by a member of Plaintiff's family.

40.     A conversation ensued where the Guardian representative told Plaintiff's family member that "the bank owns this property and you have no right to be here." The family member told the Guardian representative that Plaintiff owned the home, and that Plaintiff had filed a lawsuit

Electronically Filed - Washington - October 15, 2021 - 11:27 AM

against LoanCare. The Guardian representative made a phone call and then left the premises.

41.     The Guardian representative caused damage to Plaintiff's property while trespassing thereon, and some of Plaintiff's spouse's tools which had been left in the house came up missing.

42.     Sometime in December of 2020 LoanCare retained a vendor known as Missouri Property Services. On December 23, 2020, representatives of Missouri Property Services appeared at the property located on Zinc Mine Road.

43.     Plaintiff's teenage son was present on the property at the time, and the Missouri Property Services representative told Plaintiff's son that he "was not supposed to be living there," that he and his family needed to leave the property, and that the mortgage company owned the property. The representative stated that he had been sent there to obtain photos of the property and needed to get inside to secure the property.

44.     After the conversation with Plaintiff's son the Missouri Property Services Representative made a phone call and then left the property.

45.      On January 25, 2021 Plaintiff reviewed her Equifax credit file and found the Loan-Care continues to punish her by showing that she is 180 days past due on the account desipite Loancare's knowledge that Plaintiff had made all of the required payments on the account until Loan-Care declared her account to be in default and began returning her monthly payments without any legal justification. The problems with Plaintiff's account are directly attributable to the wrongful, illegal and abusive actions of Defendant Loancare.

46.     On August 19, 2021 Plaintiff received a Notice from a law firm known as South & Associates indicating that it had been retained by LoanCare to serve as the Foreclosure Trustee pursuant to the Deed of Trust on the property and that her Zinc Mine property was going to be sold at a foreclosure auction on September 13, 2021.

Electronically Filed - Washington - October 15, 2021 - 11:27 AM

47.     Plaintiff's counsel put South & Associates on notice that this litigation was pending, and that it involved a dispute about LoanCare not properly crediting monthly payments made which Plaintiff made on the account and illegally declaring the account as being in default and a subsequent refusal to receive monthly payments from Plaintiff.

48.     Defendants LoanCare and NewRez have continued to subject Plaintiff to their abusive collection tactics on the mortgage account despite that fact that they and their representatives are in possession of the documentation showing that Plaintiff was not in default when LoanCare declared her to be in default and began refusing to accept her monthly payments. The conduct has become more abusive since this lawsuit was filed.

## COUNT I
## VIOLATION OF THE REAL ESTATE SETTLEMENT PROCEDURES ACT ("RESPA"), 12 USC § 1605
## (LOANCARE, LLC)

49.     In this Count, Plaintiff hereby re-alleges and incorporates by reference each of the other allegations contained in this Petition as if fully set forth herein.

50.     In a letter dated November 8, 2019, and, according to the USPS tracking system, it was received by LoanCare on November 15, 2019, Plaintiff questioned the default status of her account, the amounts LoanCare was alleging as past due, and demanded that the account be corrected and updated to show her as current. Her letter included her name, the address where her property is located and the account number.  Plaintiff enclosed documents that showed that she had made every required payment from the time that LoanCare started handling the servicing on the account. This letter contained the necessary components to be considered a Notice of Error and Request for Information ("NOE") pursuant to RESPA.

51.     LoanCare failed to acknowledge receipt of the NOE within five business days as required by RESPA.

Electronically Filed - Washington - October 15, 2021 - 11:27 AM

52.    LoanCare failed to investigate the concerns raised in Plaintiff's NOE and failed to provide a written notice either that her account was being corrected or a written notice of the reasons LoanCare believed the account was correct as required by RESPA.

53.    LoanCare has continued to use abusive and illegal tactics based on its incorrect position concerning Plaintiff's account since this lawsuit was filed on June 11, 2020 by sending vendors to Plaintiff's property for the purpose of "securing and winterizing" it, even though it had no legal right to do so, and initiating the foreclosure process which including publishing the notice of foreclosure and scheduling a foreclosure date.

54.    As a direct and proximate result of LoanCare's actions, Plaintiff has suffered economic and emotional damages, including but not limited to loss of real and personal property, the loss of equity in her property, a damaged credit rating, and stress, embarrassment and humiliation.

**WHEREFORE**, Plaintiff prays for judgment against the Defendant for actual, compensatory, statutory damages, and attorney's fees, in an amount to exceed Twenty Five Thousand Dollars ($25,000.00), and for such other and further relief as the Court deems just and proper in the circumstances.

## COUNT II
## VIOLATIONS OF 15 U.S.C. § 1681s-2(b) (FAIR CREDIT REPORTING ACT)
## (LOANCARE, LLC)
## Negligent & Willful Violations

55.    In this Count, Plaintiff hereby re-alleges and incorporates by reference each of the other allegations contained in this Petition as if fully set forth herein.

56.    LoanCare is a "furnisher" as that term is used in 15 U.S.C. § 1681s-2.

57.    TransUnion, Equifax and Experian are credit reporting agencies ("CRA") as that term is used in and contemplated by 15 U.S.C. § 1681i and 15 U.S.C. § 1681s-2.

58.     Furnishers of credit information have duties under the FCRA; specifically 15 U.S.C.

§ 1681s-*2*(b)(1) requires furnishers to investigate disputes that consumers initiate with the credit reporting agencies regarding the accuracy of information reported about them by the furnisher.

59.    On or about November 14, 2019 Plaintiff contacted all three CRA's (Experian, Equifax and Trans Union) to dispute the accuracy of the derogatory LoanCare account being reported about her.

60.    Plaintiff specifically advised all three CRA's that mistakes had been made, provided all necessary information to each CRA to support her disputes, and requested that the false information be corrected accordingly.

61.    Upon information and belief, LoanCare received notification of these disputes from Experian, TransUnion and Equifax pursuant to 15 U.S.C. § 1681i(a)(2).

62.    By failing to conduct a reasonable investigation into Plaintiff's disputes in this regard, LoanCare negligently and/or willfully violated § 1681s-2(b)(1) with respect to each dispute lodged by Plaintiff.

63.    LoanCare has continued to furnish inaccurate and derogatory information to the credit reporting agencies due to its mistaken decision to declare Plaintiff's account in default, to accelerate the loan and its refusal to accept timely monthly payments. It is now showing Plaintiff's account as more than 180 days past due.

64.    As a direct and proximate result of LoanCare's willful and/or negligent refusal to comply with the FCRA as described herein, Plaintiff has suffered loss and damage including, but not limited to: financial loss, loss of creditworthiness, loss of credit opportunity, damage to reputation, expenditure of significant time, energy and out-of-pocket costs, considerable distress, mental anguish, worry, frustration, fear and embarrassment, entitling Plaintiff to an award of actual damages as determined by a jury, plus attorney's fees and the costs of this action, pursuant to 15 U.S.C.

Electronically Filed - Washington - October 15, 2021 - 11:27 AM

Electronically Filed - Washington - October 15, 2021 - 11:27 AM

§ 1681o.

65.    LoanCare's complete and utter indifference as to its obligations under the FCRA reveals a conscious disregard of the rights of Plaintiff, and the injuries suffered by Plaintiff are attended by circumstances of fraud, malice, and willful and wanton misconduct, calling for an assessment of punitive damages against LoanCare, pursuant to 15 U.S.C. § 1681n(a)(2).

**WHEREFORE** Plaintiff prays for judgment on this Claim for Relief in her favor and against LoanCare, and for the following relief:

a)    Actual damages sustained;
b)    Statutory damages of not less than $100 and not more than $1000 on each willful violation of the FCRA;
c)    Punitive damages in an amount to be determined by the jury;
d)    Reasonable attorneys' fees and costs; and
e)    any other and/or further relief as deemed appropriate and just by this Honorable Court.

## COUNT III
## VIOLATIONS OF THE MISSOURI MERCHANDISING PRACTICES ACT (DEFENDANT LOANCARE, LLC)

66.    In this Count, Plaintiff hereby re-alleges and incorporates by reference each of the other allegations contained in this Petition as if fully set forth herein.

67.    Defendant LoanCare was acting as a mortgage servicer on Plaintiff's account from April 1, 2019 to the present.

68.    Defendant Loancare's actions were in connection with the Sale of the original loan, and, as such, its actions are subject to the Missouri Merchandising Practices Act (herinafter "MMPA"). See RSMo Section 407.020.1, _Conway v. Citimortgage, Inc._ 438 S.W.3d 410 (Mo. 2014) and _Watson v. Wells Fargo_, 438 S.W.3d 404 (Mo, 2014).

69.    Defendant LoanCare engaged in unfair, deceptive, and misleading practices in connection with the servicing of the mortgage on Plaintiff's property in violation of the MMPA

Electronically Filed - Washington - October 15, 2021 - 11:27 AM

(RSMo.§ 407.010 RSMo. et seq.) by its actions as described in the preceding paragraphs. These actions include but are not limited to the following:

    a. Failing to properly credit Plaintiff's monthly payments and update it accounting records;

    b. Declaring that Plaintiff was in default on her account when she was not in default;

    c. Adding late fees, penalties and other default charges to plaintiff's account and balance due when she was not in default;

    d. Ignoring and/or willfully disregarding all of the evidence and documentation provided by Plaintiff demonstrating that she had made all of the required payments on the account and was not default;

    e. Placing Plaintiff's account into foreclosure without any legal justification;

70.    As a direct and proximate result of Defendant LoanCare's actions, plaintiff's has suffered out of pocket fees and expenses, medical expenses, economic and emotional damages, including but not limited to loss of real and personal property, the loss of equity in her property, a damaged credit rating, and stress, embarrassment and humiliation.

71.    An award of punitive damages is appropriate because Loancare's conduct was outrageous, willful and wanton, and it showed a reckless disregard for the rights of Plaintiff.

**WHEREFORE**, Plaintiff prays for judgment against defendant LoanCare for actual, compensatory, punitive damages, and attorney's fees, in an amount to

Electronically Filed - Washington - October 15, 2021 - 11:27 AM

exceed Twenty Five Thousand Dollars ($25,000.00), and for such other and further relief as the Court deems just and proper in the circumstances.

## COUNT IV
## SLANDER OF TITLE
## (DEFENDANT LOANCARE)

72.     In this Count, Plaintiff hereby re-alleges and incorporates by reference each of the other allegations contained in this Petition as if fully set forth herein.

73.     Plaintiff was not in default on the mortgage which being serviced by LoanCare when it made the declaration that she was in default and began refusing to accept timely monhtly payments.

74.     Plaintiff and her former spouse made multiple attempts by phone, email and written correspondence to notify LoanCare of its accounting error and demand that it correct and update the account. After those attempts did not cause LoanCare to adjust and correct the account accordingly, Plaintiff filed this lawsuit on June 11, 2020.

75.     Despite these multiple warnings from Plaintiff and its participation in this litigation, LoanCare has continued to assert that Plaintiff is in default, and engaged in its abusive collection tactics. All of the actions taken by LoanCare after this lawsuit was filed have been reported to and brought to the attention of LoanCare's attorney.

Electronically Filed - Washington - October 15, 2021 - 11:27 AM

76.     LoanCare knew or should have known knew that plaintiff was not in default, but has proceeded with non-judicial foreclosure despite this knowledge and published notice of trustee sale set for September 13, 2021 while knowing there was no default.

77.     This knowing and willful publishing of false information regarding default on plaintiff's deed of trust was malicious.

78.     As a direct and proximate result of LoanCare's actions, Plaintiff has suffered economic and emotional damages, including but not limited to the loss of equity in her property, a damaged credit rating, and stress, embarrassment and humiliation.

79.     All conditions necessary bringing and prevailing on this claim by Plaintiff have been satisfied.

WHEREFORE, Plaintiff prays for judgment against defendant LoanCare for actual, compensatory, punitive damages, and attorney's fees, in an amount to exceed Twenty Five Thousand Dollars ($25,000.00), and for such other and further relief as the Court deems just and proper in the circumstances.

### COUNT V
### VIOLATION OF THE REAL ESTATE SETTLEMENT PROCEDURES ACT ("RESPA"), 12 USC § 1605
### (DEFENDANT NEW REZ, LLC)

80.     In this Count, Plaintiff hereby re-alleges and incorporates by reference each of the other allegations contained in this Petition as if fully set forth herein.

81.     At all times mention herein, Defendant LoanCare was contractually retained by Defendant NewRez to be the subservicer on Plaintiff's account, and LoanCare was at all times mentioned herein acting on behalf of and as the agent for Defendant NewRez as the servicer on Plaintiff's loan with all actual and apparent authority .

82.     NewRez is liable for the wrongs committed by LoanCare against Plaintiff as set

Electronically Filed - Washington - October 15, 2021 - 11:27 AM

forth in this Petition by virtue of vicarious liability/agency.

83.     In a letter dated November 8, 2019, which the USPS confirms was received by LoanCare on November 15, 2019, Plaintiff questioned the default status of her account, the amounts LoanCare was alleging as past due, and demanded that the account be corrected and updated to show her as current. Her letter included her name, the address where her property is located and the account number.  Plaintiff enclosed documents that showed that she had made every required payment from the time that LoanCare started handling the servicing on the account until the date that the letter was sent. This letter contained the necessary components to be considered a Notice of Error and Request for Information ("NOE") pursuant to RESPA.

84.     LoanCare failed to acknowledge receipt of the NOE within five business days as required by RESPA.

85.     LoanCare failed to investigate the concerns raised in Plaintiff's NOE and failed to provide a written notice either that her account was being corrected or a written notice of the reasons LoanCare believed the account was correct as required by RESPA.

86.     LoanCare has continued to use abusive and illegal tactics based on its incorrect position concerning Plaintiff's account since this lawsuit was filed on June 11, 2020 by sending vendors to Plaintiff's property for the purpose of "securing and winterizing" it, even though it had no legal right to do so, and initiating the foreclosure process which including publishing the notice of foreclosure and scheduling a foreclosure date.

87.     As a direct and proximate result of LoanCare actions which were made on behalf of Defendant NewRez, Plaintiff has suffered economic and emotional damages, including but not limited to loss of real and personal property, the loss of equity in her property, a damaged credit rating, and stress, embarrassment and humiliation.

**WHEREFORE**, Plaintiff prays for judgment against the Defendant NewRez for actual, compensatory, statutory damages, and attorney's fee in an amount to exceend Twenty Five Thousand Dollars ($25,000.00) and for such other and further relief as the Court deems just and proper in the circumstances.

**COUNT VI**
**VIOLATIONS OF 15 U.S.C. § 1681s-2(b) (FAIR CREDIT REPORTING ACT)**
**(NEWREZ, LLC)**
**Negligent & Willful Violations**

88.    In this Count, Plaintiff hereby re-alleges and incorporates by reference each of the other allegations contained in this Petition as if fully set forth herein.

89.    At all times mention herein, Defendant LoanCare was contractually retained by Defendant NewRez to be the subservicer on Plaintiff's account, and LoanCare was at all times mentioned herein acting on behalf of and as the agent for Defendant NewRez as the servicer on Plaintiff's account with all actual and apparent authority .

90.    NewRez is liable for the wrongs committed by LoanCare against Plaintiff as set forth in this Petition by virtue of vicarious liability/agency.

91.    LoanCare is a "furnisher" as that term is used in 15 U.S.C. § 1681s-2.

92.    TransUnion, Equifax and Experian are credit reporting agencies ("CRA") as that term is used in and contemplated by 15 U.S.C. § 1681i and 15 U.S.C. § 1681s-2.

93.    Furnishers of credit information have duties under the FCRA; specifically 15 U.S.C. § 1681s-2(b)(1) requires furnishers to investigate disputes that consumers initiate with the credit reporting agencies regarding the accuracy of information reported about them by the furnisher.

94.    On or about November 14, 2019 Plaintiff contacted all three CRA's (Experian, Equifax and Trans Union) to dispute the accuracy of the derogatory LoanCare account being reported about her.

Electronically Filed - Washington - October 15, 2021 - 11:27 AM

95.    Plaintiff specifically advised all three CRA's that mistakes had been made, provided all necessary information to each CRA to support her disputes, and requested that the false information be corrected accordingly.

96.    Upon information and belief, LoanCare received notification of these disputes from Experian, TransUnion and Equifax pursuant to 15 U.S.C. § 1681i(a)(2).

97.    By failing to conduct a reasonable investigation into Plaintiff's disputes in this regard, LoanCare negligently and/or willfully violated § 1681s-2(b)(1) with respect to each dispute lodged by Plaintiff.

98.    LoanCare has continued to furnish inaccurate and derogatory information to the credit reporting agencies due to its mistaken decision to declare Plaintiff's account in default, to accelerate the loan and its refusal to accept timely monthly payments. It is now showing Plaintiff's account as more than 180 days past due.

99.    As a direct and proximate result of LoanCare's willful and/or negligent refusal to comply with the FCRA as described herein, all of which were undertaken on behalf of and as the agent of Defendant, NewRez, Plaintiff has suffered loss and damage including, but not limited to: financial loss, loss of creditworthiness, loss of credit opportunity, damage to reputation, expenditure of significant time, energy and out-of-pocket costs, considerable distress, mental anguish, worry, frustration, fear and embarrassment, entitling Plaintiff to an award of actual damages as determined by a jury, plus attorney's fees and the costs of this action, pursuant to 15 U.S.C. § 1681o.

100.    LoanCare's complete and utter indifference as to its obligations under the FCRA, all of which were undertaken on behalf of and as the agent for Defendant NewRez, LLC, reveals a conscious disregard of the rights of Plaintiff, and the injuries suffered by Plaintiff are attended by circumstances of fraud, malice, and willful and wanton misconduct, calling for an assessment of

Electronically Filed - Washington - October 15, 2021 - 11:27 AM

punitive damages against LoanCare and NewRez, pursuant to 15 U.S.C. § 1681n(a)(2).

**WHEREFORE** Plaintiff prays for judgment on this Claim for Relief in her favor and against NewRez, and for the following relief:

f)    Actual damages sustained;

g)    Statutory damages of not less than $100 and not more than $1000 on each willful violation of the FCRA;

h)    Punitive damages in an amount to be determined by the jury;

i)    Reasonable attorneys' fees and costs; and

j)    any other and/or further relief as deemed appropriate and just by this Honorable Court.

## COUNT VII
## VIOLATIONS OF THE MISSOURI MERCHANDISING PRACTICES ACT
## (DEFENDANT NEWREZ, LLC)

101.    In this Count, Plaintiff hereby re-alleges and incorporates by reference each of the other allegations contained in this Petition as if fully set forth herein.

102.    At all times mention herein, Defendant LoanCare was contractually retained by Defendant NewRez to be the subservicer on Plaintiff's account, and LoanCare was at all times mentioned herein acting on behalf of and as the agent for Defendant NewRez as the servicer on Plaintiff's account with all actual and apparent authority .

103.    NewRez is liable for the wrongs committed by LoanCare against Plaintiff as set forth in this Petition by virtue of vicarious liability/agency.

104.    Defendant LoanCare was acting as a mortgage subservicer on Plaintiff's account from April 1, 2019 to the present.

105.    Defendant Loancare's actions were in connection with the Sale of the original loan, and, as such, its actions are subject to the Missouri Merchandising Practices Act (herinafter "MMPA"). See RSMo Section 407.020.1, _Conway v. Citimortgage, Inc._ 438 S.W.3d 410 (Mo.

Electronically Filed - Washington - October 15, 2021 - 11:27 AM

2014) and _Watson v. Wells Fargo_, 438 S.W.3d 404 (Mo, 2014).

106.    Defendant LoanCare engaged in unfair, deceptive, and misleading practices in connection with the servicing of the mortgage on Plaintiff's property in violation of the MMPA (RSMo.§ 407.010 RSMo. et seq.) by its actions as described in the preceding paragraphs. These actions include but are not limited to the following:

a.  Failing to properly credit Plaintiff's monthly payments and update it accounting records;

b.  Declaring that Plaintiff was in default on her account when she was not in default;

c.  Adding late fees, penalties and other default charges to plaintiff's account and balance due when she was not in default;

d.  Ignoring and/or willfully disregarding all of the evidence and documentation provided by Plaintiff demonstrating that she had made all of the required payments on the account and was not default;

e.  Placing Plaintiff's account into foreclosure without any legal justification;

f.  Hiring third party vendors in July of 2020 and December of 2020, after this lawsuit was filed, to "secure and winterize" Plaintiff's property without any legal justification;

g.  Continuing to furnish false and derogatory information about Plaintiff's account to the 3 credit reporting agencies to the point that it showing Plaintiff as more than 180 past due, when in actuality, Plaintiff would have continued to stay current on the account had LoanCare properly credited her payments and not declared the account in default;

Electronically Filed - Washington - October 15, 2021 - 11:27 AM

h.   Initiating the foreclosure process in August of 2021, publishing the foreclosure, and scheduling a foreclosure auction sale on September 13, 2021.

107.    As a direct and proximate result of Defendant LoanCare's actions, all of which were undertaken on behalf of and as the agent for Defendant NewRez, LLC, Plaintiff has suffered out of pocket fees and expenses, medical expenses, economic and emotional damages, including but not limited to loss of real and personal property, the loss of equity in her property, a damaged credit rating, and stress, embarrassment and humiliation.

108.    An award of punitive damages is appropriate because Loancare's conduct, undertaken on behalf of and as the agent for Defendant NewRez, LLC was outrageous, willful and wanton, and it showed a reckless disregard for the rights of Plaintiff.

WHEREFORE, Plaintiff prays for judgment against defendant NewRez for actual, compensatory, punitive damages, and attorney's fees, in an amount to exceed Twenty Five Thousand Dollars ($25,000.00), and for such other and further relief as the Court deems just and proper in the circumstances.

**COUNT IV**
**SLANDER OF TITLE**
**(DEFENDANT NEWREZ, LLC)**

109.    In this Count, Plaintiff hereby re-alleges and incorporates by reference each of the other allegations contained in this Petition as if fully set forth herein.

110.    At all times mention herein, Defendant LoanCare was contractually retained by Defendant NewRez to be the subservicer on Plaintiff's account, and LoanCare was at all times mentioned herein acting on behalf of and as the agent for Defendant NewRez as the servicer on Plaintiff's account with all actual and apparent authority. Defendants LoanCare and New Rez were sharing the monthly servicing fees on Plaintiff's account

111.    NewRez is liable for the wrongs committed by LoanCare against Plaintiff as set forth in this Petition by virtue of vicarious liability/agency.

112.    Defendant LoanCare was acting as a mortgage subservicer on Plaintiff's account from April 1, 2019 to the present.

113.    Plaintiff was not in default on the mortgage which being serviced by LoanCare when it made the declaration that she was in default and began refusing to accept timely monhtly payments.

114.    Plaintiff and her former spouse made multiple attempts by phone, email and written correspondence to notify LoanCare of its accounting error and demand that it correct and update the account. After those attempts did not cause LoanCare to adjust and correct the account accordingly, Plaintiff filed this lawsuit on June 11, 2020.

115.    Despite these multiple warnings from Plaintiff and its participation in this litigation, LoanCare has continued to assert that Plaintiff is in default, and engaged in its abusive collection tactics. All of the actions taken by LoanCare after this lawsuit was filed have been reported to and brought to the attention of LoanCare's attorney.

116.    LoanCare knew or should have known knew that plaintiff was not in default, but has proceeded with non-judicial foreclosure in August of 2021 despite this knowledge and published notice of a trustee sale on the property set for September 13, 2021 when it knew or should have known there was no default.

117.    This knowing and willful publishing of false information regarding default on plaintiff's deed of trust was malicious.

118.    As a direct and proximate result of LoanCare's actions on behalf of NewRez, Plaintiff has suffered economic and emotional damages, including but not limited to the loss of equity in

her property, a damaged credit rating, and stress, embarrassment and humiliation.

119.    All conditions necessary bringing and prevailing on this claim by Plaintiff have been satisfied.

WHEREFORE, Plaintiff prays for judgment against defendant NewRez for actual, compensatory, punitive damages, and attorney's fees, in an amount to exceed Twenty Five Thousand Dollars ($25,000.00), and for such other and further relief as the Court deems just and proper in the circumstances.

Respectfully Submitted,

## HEALEY LAW, LLC

/s/ Robert T. Healey
ROBERT T. HEALEY
Missouri Bar No. 34138
640 Cepi Drive, Suite A
Chesterfield, MO 63005
bob@healeylawllc.com
(314) 401-3261 (telephone)
(636) 590-2882 (facsimile)
Counsel for Plaintiff

Electronically Filed - Washington - October 15, 2021 - 11:27 AM